IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | 8:02CR429 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| WILLIAM T. MONNIER, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court on defendant's "Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" ("§ 2255 motion"), Filing No. 214.[1]  In his motion, Monnier asserts ineffective assistance of counsel at trial and on appeal.

I.  FACTS

William T. Monnier was charged in a two-count indictment with conspiracy to distribute 500 grams or more of methamphetamine in violation of 21 U.S.C. § 846, and distribution of less than 50 grams of methamphetamine that resulted in death of Esperanza Mendoza in violation of 21 U.S.C. § 841(a)(1) and 841(b)(C).  A conviction for conspiracy to distribute more than 500 grams of methamphetamine is subject to a mandatory minimum sentence of ten years and a conviction for drug distribution resulting in serious bodily injury or death carries a mandatory minimum sentence of twenty years.  21 U.S.C. §§ 841(a)(1) and (b)(1)(C); 846.

---

[1]Monnier has also submitted a pro se request for an evidentiary hearing.  In light of the court's disposition, the court finds the motion is moot.

The evidence adduced at trial showed that Monnier was one of several people who partied with Esperanza Mendoza on the day she died of acute methamphetamine toxicity. Filing No. 158, Filing No. 160, Filing No. 161, Filing No. 162, Filing No. 196, Trial Transcript ("Tr."), Volumes ("Vol.") I-VI.  Several cooperating witnesses testified for the government pursuant to federal cooperation plea agreements or grants of immunity.  Filing No. 160, Tr., Vol. III at 473*; Filing No. 161, Tr., Vol. IV at 590; Filing No. 196, Tr., Vol. II at 130, 187, 241.  They testified that Monnier either bought or sold drugs from them.  *See, e.g.,* Filing No. 160, Tr., Vol. III *at* 459-653; Filing No. 162, Vol. V at 687; Filing No. 196, Tr., Vol. II at 134-37.  Rick Edwards recounted a history of buying and selling drugs with Monnier.  Filing No. 196, Tr., Vol. II at 133-40.  Ed Imler testified that he sold a quarter pound of methamphetamine to Monnier shortly before Mendoza's death.  Filing No. 160, Tr., Vol. III at 468.   Rick Edwards and Brandy Stroud testified that Monnier supplied methamphetamine to Mendoza the night before she died.  Filing No. 196, Tr., Vol. II at 152, 203.  They testified they rented a hotel room with Monnier and Mendoza and smoked methamphetamine in the hot tub.  *Id.* at 146-51.  Stroud testified that she saw Mendoza smoke, snort, and eat methamphetamine and that the only methamphetamine she saw consumed that evening belonged to Monnier.  *Id.* at 203-207.  Stroud and Edwards left Monnier and Mendoza at the motel.  *Id.* at 198-207.  Edwards testified that Monnier came to Edwards's apartment later that evening and asked Stroud to return to the motel to "calm [Mendoza] down."  *Id.* at 153.  When Stroud returned to the motel, she found Mendoza sweating profusely and vomiting, and Mendoza later suffered a seizure.  *Id.* at 215-19. Stroud did not call 911, but cleaned up the motel room and left to find others to help.  *Id.*

at 217-19.    When Stroud returned to the motel, Mendoza was unconscious and nonresponsive.  *Id.* at 223.

Three witnesses testified for the defendant.    Valencia Polanco testified that Mendoza had stated "in a derogatory and joking way" that she was going to party in a motel room with some black guys.  Filing No. 161, Tr., Vol. IV at 598.  Ron Woodward testified that Mendoza had called him early in the evening of April 15, 2001, and stated that she and Brandy Stroud were going to a party later that evening.  Filing No. 162, Vol. V at 716-17. He stated, however that he had no knowledge of where Mendoza went that night.  *Id.* at 717.  John McNeel, a private investigator hired by the defendant, testified that no one other than Brandy Stroud and Rick Edwards told him they were present with Monnier and Mendoza in the motel room on the night of Mendoza's death.  *Id.* at 729.

Teresa James was also called to testify and was sworn in as a witness, but she invoked the Fifth Amendment.  Filing No. 162, Tr., Vol. V at 745-50.  Defense counsel then moved for a mistrial.  *Id.* at 743.  The motion for a mistrial was denied, but James Sali was permitted to testify that Teresa James had told him that she had been "doing dope" with Brandy Stroud on April 16, 2001, and was at the motel room with Stroud and Mendoza when Mendoza was sick.  *Id.* at 819, 763-65.  Medical evidence established that Mendoza died from "the effects of toxic levels of methamphetamine."  Filing No. 160, Vol. III at 447.

Monnier did not testify.    Outside of the presence of the government, the court questioned Monnier on the subject of his right not to testify and Monnier assured the court

that he knowingly elected not to testify.[2]    The jury returned a verdict of guilty on both

counts.  Filing No. 146, Jury Verdict.  The court denied Monnier's motions for new trial and

for a judgment of acquittal.  Filing No. 178.

Prior to sentencing, the United States Probation Office ("Probation Office") prepared

a Presentence Investigation Report ("PSR").  Filing No. 177, PSR (sealed).  In the PSR,

the  Probation  Office  determined  that  the  United  States  Sentencing  Guidelines

("Guidelines") establish a base offense level of 38 for a conviction for distribution of

methamphetamine that results in death.[3]  *Id.* at 10; *see* U.S.S.G. § 2D1.1(a)(2).  Probation

---

[2]The following colloquy took place:

[DEFENSE COUNSEL]:  Judge, I have visited with my client with respect to his right to testify and his
right not to testify and exercise his right under the 5th Amendment.
        I have told him that ultimately that is his decision and that no matter what I tell him, ultimately he
makes the call.
        It is my counsel to him that he not testify and that he exercise his right under the Fifth Amendment.
        And I just want to make a record with respect to that; I have given him that counsel, that advice, and
he's aware of both of his right to testify and his right not to testify and the fact that if he does not testify there
will be a jury instruction that will direct the jury that that cannot be held against him or used in any way, shape,
form or fashion against him.
        THE COURT:  Mr. Monnier, do you understand that you have the right to testify and you have the right
not to testify.  Do you understand that, sir?
        THE DEFENDANT:  Yes, sir, I do.
        THE COURT:  We've already given an instruction to the jury that says that they cannot consider the
fact that you don't testify in the event you don't.  Do you understand that?
        THE DEFENDANT:  Yes, sir, I do.
        THE COURT:  And have you decided what you want to do?
        THE DEFENDANT:  I pled not guilty, sir.  I'll be not testifying.
        THE COURT:  You've decided not to testify; is that correct?
        THE DEFENDANT:  That would be correct.
        THE COURT:  You have had enough time to think about this decision?
        THE DEFENDANT:  A long time, yes, sir.
        THE COURT:  This is your final decision; is that correct?
        THE DEFENDANT:  That's my final decision.
        THE COURT:  And you're thinking clearly enough today, I take it?
        THE DEFENDANT:  Very clearly.

Filing No. 162, Trial Transcript ("Tr."), Volume ("Vol.") V at 821-823.

[3]The Probation Office also determined that Monnier should be held responsible for conspiring to
distribute more than 4658 grams of methamphetamine, resulting in a base offense level of 34 for Count I.
Filing No. 177, PSR at 5.  The base offense level for conspiring to distribute that quantity of methamphetamine
under the Guidelines is 34.  Under U.S.S.G. § 3D1.2 (d) and 3D1.3(b), the counts are grouped, and the
guideline that produces the highest offense level is applied.

recommended in the PSR that Monnier should receive a three-level increase to his base offense level for his role as manager or supervisor in the offense and a two-level enhancement for obstruction of justice, resulting in a recommended Total Offense Level of 43.  Filing No. 177, PSR at 10.  It further determined that Monnier's criminal history category was III, based on the assessment of five criminal history points for convictions for third-degree assault and criminal mischief.  At criminal history category III and base offense level 43, Monnier's Guidelines sentencing range was life in prison.

Monnier objected to the base offense level and to the recommended enhancements for role in the offense and obstruction of justice.  Filing No. 171.  He also moved for a downward departure based on the victim's conduct under U.S.S.G. § 5K2.10 and for overstatement of his criminal history under U.S.S.G. § 4A1.3.  Filing No. 175.  He argued that the evidence showed that the victim's wrongful conduct contributed to her death in that she voluntarily ingested methamphetamine, participated in a "meth party" several hours before her death and had used methamphetamine for eight months before her death.  He further contended that Ms. Mendoza's death was not foreseeable.  He also argued for a downward departure to criminal history category II because he had been assessed several criminal history points for misdemeanor assault charges that resulted in fines.  See Filing No. 176, Brief.

Monnier was sentenced after a hearing on November 19, 2003.  Filing No. 178. Minute Entry; Filing No. 180, Judgment.  At the sentencing hearing, the court sustained Monnier's objection to the role in the offense enhancement, but overruled the defendant's objection to the obstruction of justice enhancement, resulting in a total offense level of 40.[4]

---

[4]The court found Monnier was not a manager or supervisor, but rather had a symbiotic relationship with Rick Edwards.  Filing No. 194, Sent. Tr. at 925-26.

Filing No. 194, Sentencing Tr., Vol. VII, ("Sent. Tr.") at 925-26.  At offense level 40 and criminal history category III, Monnier's sentencing range under the Guidelines was 360 months to life.

The court denied Monnier's motion for downward departure with respect to overstatement of his criminal history, but invited argument on the victim-conduct issue.  *Id.* at 935.  Monnier's counsel conceded that there were no cases exactly on point, but argued that "it's clear that the victim's conduct at least contributed at some point in time to her ultimate and tragic death by voluntarily consuming, whether it was by injection, nasally, or however, by eating methamphetamine, which I assume she knew was illegal because she had been using it for at least eleven months according to the defendant's expert," and that "the victim should bear some responsibility for, not provoking, but for significantly contributing to the events, which is ultimately her death."  *Id.* at 927.

In response, the government argued that drug distribution resulting in death is a strict liability crime and therefore "the victim cannot contribute, no matter what, to decreasing the outcome of this crime."  *Id.* at 928.  It contended that a downward departure for victim conduct was prohibited under the Guidelines, relying on *United States v. Sheridan*, 270 F.3d 669, 673 (8th Cir. 2001) and *United States v. McIntosh*, 236 F.3d 968, 973 (8th Cir. 2001).[5]  The following colloquy ensued:

> THE COURT:  The statutory sentence is twenty to life, and it seems to me that someone that is more removed or has less culpability than the person that would actually force it down someone, or do it surreptitiously, is more culpable than the person that was partying with somebody else and

---

[5]In *Sheridan*, the Eighth Circuit reversed this court's downward departure for victim misconduct.  *See Sheridan*, 270 F.3d at 673.  The *McIntosh* case involved a Guidelines enhancement for death as a result of drug distribution under U.S.S.G. § 5G1.1(c)(2) and the Eighth Circuit found that the enhancement can be imposed even if death is unforeseeable.  *McIntosh*, 236 F.3d at 973-74.  McIntosh had been sentenced to the mandatory minimum sentence of twenty years under 21 U.S.C. § 841(b)(1)(C).

6

somebody happened to get more dope than the other guy and has an overdose and dies.

It seems to me that has to do with the relativity in the sentence, either twenty to life.

And what you're saying is that the court cannot as a matter of law consider that relative circumstance to downwardly [depart]?

[THE GOVERNMENT]: Yes, because they specifically set it at a level, which is a 38. In *McIntosh* that's exactly what that defendant got and I think he's even further removed.

THE COURT: There's no argument that I can depart, or maybe I'm misunderstanding, there is no argument that I can depart below the statutory level. It's a question of whether it departs from 360 to 240, I think.

[THE GOVERNMENT]: Right. I think that still applies, because what Congress said is, based on this, if someone dies, here is where we are going. We are going to a level 38, and to say that by a person taking it voluntarily you then get to depart from there I think goes directly against what they said by setting a specific number.

*Id.* at 930-31. Defense counsel continued to argue that a downward departure was permitted and appropriate. *Id.* at 932.

The court addressed the victim's culpability, stating "I know that this sounds like the less than courageous way out, but—I'm fully mindful of Blackbird Sheridan's case." *Id.* at 935. The court commented: "I don't think this case fits into that same category, but I don't know that I'm authorized under the law to grant this motion for downward departure, because I don't know that this departure is applicable to this offense." *Id.* at 936. The court continued:

I think what I am going to do is to deny the motion for downward departure for the reason that I don't believe that it applies as a matter of law and let the Circuit decide whether or not this guideline application may even be contemplated in light of this particular charge.

*Id.* at 936.

At allocution, Monnier commented at length about the difficulty he had accepting responsibility for Ms. Mendoza's death. *Id.* at 937-47. He continued to maintain that he did not give Mendoza the drugs that killed her, though he admitted to being an addict and an adulterer. *Id.* at 947, 945, and 937. The following discussion then ensued:

THE COURT:  Mr. Monnier, I appreciate your position on this.

Unfortunately today is the date of sentencing; not a trial. If you have some issues with the lawyer that represented you, or the way the trial was done, you can certainly bring that up on the appeal, or you can bring it up in a post conviction action, and your attorney, Mr. Bowie, can advise you about all of that and I'll consider that at that time when it comes back to me, if it does come back to me, either on appeal or on post conviction.
And other than that, I don't know what to tell you, but I will tell you that the more you talk the more trouble you are probably going to get yourself in as far as your appeal is concerned.

THE DEFENDANT: For telling the truth, sir?

THE COURT: I understand what you're telling me, and I understand the position that you're in.
But this law with respect to providing the drugs that causes someone to die is really a tough law.
One of the cases that Ms. Bunjer cited to me was a person who gave somebody the drugs who then gave somebody else the drugs, second party removed, and he was convicted, and you're right there.
I don't know who was the one that actually gave Ms. Mendoza the drugs, but the jury decided that you were one of those people.
And it's unfortunate that the other people that were involved don't go to jail, too.
And they probably made a deal with the devil and they don't go to jail.
But you are the one that gets stuck and I can't concern myself with that.
I can only concern myself with the person that gets convicted.

THE DEFENDANT: I understand.

THE COURT:  Now whether you were wrongly convicted or not, you still have avenues of appeal with respect to that.
But you had your day in court and I can't undo that, or at least I don't think I have the authority to undo that, based on what I've seen and heard.
So the question is, what do I do with you now? I think that under the Guidelines I really don't have much choice, other than to do what I'm doing.

> The government is going to tell me to give you life imprisonment. I'm going to give you the minimum sentence. But the minimum sentence is probably—
>
> THE DEFENDANT: It's still life to me, Your Honor.
>
> THE COURT: —longer than you are going to live.
>
> THE DEFENDANT: Yes, it is.
>
> THE COURT: With your medical condition, even if you got the statutory minimum, which is twenty years, maybe is longer than what you are going to live with your Hepatitis. I understand all that.

*Id.* at 947-49. Later, the court stated "I have already made the decisions that I can make as far as your case is concerned. Now the next set of decisions have to come from the Appeals Court or in a postconviction action and then I get it again." *Id.* at 949. The court sentenced Monnier to a term of imprisonment of 360 months (30 years) on each count, to be served concurrently. *Id.* at 951.

Monnier appealed his conviction and sentence to the Eighth Circuit Court of Appeals ("Eighth Circuit" or "Appeals Court"). Monnier was represented by the same attorney at sentencing and on appeal, although he had been represented by a different attorney at trial. On appeal, Monnier's appellate counsel argued that the evidence was insufficient to support Monnier's conviction. He also challenged the application of a two-point enhancement for obstruction of justice. He did not appeal the district court's denial of Monnier's motion for downward departure.[6]

---

[6]In an affidavit submitted in this proceeding, Monnier's counsel states that he "did not include the argument that the district court erred in not granting the motion for downward departure because [he] could find no support whatsoever for the proposition that Ms. Mendoza's conduct 'provoked' Mr. Monnier into giving her methamphetamine that caused her death." Filing No. 244, Index of Evidence, Attachment 3, Affidavit of W. Russell Bowie at 1.

While Monnier's appeal was pending, on June 24, 2004, the United States Supreme Court decided *Blakely v. Washington,* 542 U.S. 296 (2004). In *Blakely,* the Court invalidated the State of Washington's mandatory sentencing regime, finding it unconstitutional. *Id.* at 304-05. Shortly thereafter, Monnier's counsel moved for leave to file a supplemental brief with the Appeals Court. The Appeals Court granted the motion and Monnier's brief was filed on July 19, 2004. In the supplemental brief, Monnier's counsel challenged the application of a two-level enhancement for obstruction of justice under the then-mandatory Guidelines, and argued that Monnier's sentence violated *Blakely.* Absent application of the enhancement, Monnier's base offense level would have been 38, resulting in a Guidelines range of 292 to 365 months. Notably, Monnier's appellate counsel did not challenge the district court's denial of a downward departure under U.S.S.G. § 5K2.10, nor did he address the issue of drug quantity, or argue the sentencing factors under 18 U.S.C. § 3553(a).

In two cases decided shortly before oral argument in Monnier's appeal, the Eighth Circuit found that *Blakely* applied to the federal sentencing guidelines, but those cases were later vacated by grants of rehearings en banc. *See United States v. Mooney,* No. 02-3388, — F.3d ---, 2004 WL 1636960 at *12 (8th Cir. Jul 23, 2004) (Judges Lay and Bright, additional opinion), *vacated, reh'g en banc granted,* (8th Cir. August 6, 2004); *United States v. Pirani*, No. 03-2871, — F.3d —, 2004 WL 1748930 (8th Cir. Aug. 5, 2004), *vacated, reh'g en banc granted* (8th Cir. Aug. 16, 2004). On August 2, 2004, the Supreme Court granted certiorari in two cases to address *Blakely* issues. *See United States v. Booker*, 375 F.3d 508 (7th Cir. 2004), *cert. granted,* 73 U.S.L.W. 3073-74 (Aug 2, 2004) (No. 04-104) and *United States v. Fanfan*, No. 03-47-P-H, 2004 WL 1723114 (D. Me. June

28, 2004), *cert. granted*, 73 U.S.L.W. 3073-74 (U.S. Aug. 2, 2004) (No. 04-105).[7] The Eighth Circuit heard oral argument on Monnier's appeal on August 24, 2004.

At oral argument, Monnier's counsel argued that the evidence was not sufficient to support his conviction, and generally argued that the mandatory federal Guidelines were unconstitutional under *Blakely.* Specifically, Monnier's counsel argued that the two-level enhancement for obstruction of justice could not stand under *Blakely*, and that Monnier's sentence should be 292 months. There was some discussion of the *Booker* and *Fanfan* cases that were then pending before the Supreme Court and were to be argued in October of 2004. Counsel commented that if the Supreme Court were to hold that *Blakely* was applicable to the federal Guidelines, Monnier would be subject to an indeterminate sentence of twenty years to life, at the district court's discretion.

In response to questioning by the panel, Monnier's counsel stated that there was nothing in the trial court record to indicate that the sentencing court would have sentenced Monnier to a lower sentence. Counsel stated, however, that he would "bet the farm" that this court would have sentenced Monnier to 292 months under *Blakely*. He did not address drug quantity, the propriety of a downward departure, or consideration of the sentencing factors set out in 18 U.S.C. § 3553 at oral argument.

Monnier's case remained under submission when the Supreme Court decided *United States v. Booker,* 543 U.S. 220 (2005), on January 12, 2005. In *Booker*, the Court found that judicial fact-finding is unconstitutional under a mandatory sentencing scheme,

---

[7]After *Blakely* was issued, this court took the position that it could "continue to sentence under the Guidelines to the extent that factors increasing the 'maximum,' as it is defined in *Blakely*, are charged in the indictment and either admitted or submitted to a jury (or to the court if a jury is properly waived) under the standard of proof beyond a reasonable doubt." *United States v. Terrell*, No. 04-CR-24, 2004 WL 1661018 (D. Neb. July 22, 2004); *United States v. Swan*, 327 F. Supp. 1068 (D. Neb. Aug. 2, 2004).

but remedied the Constitutional violation by rendering the Guidelines advisory.  *Booker,* 543 U.S. at 233, 259-60.  After *Booker*, district courts must consult the Guidelines, but are not obligated to follow them and a sentence imposed in the exercise of discretion will be upheld if reasonable.  *Id.* at 264.

On July 5, 2005, the Eighth Circuit issued its opinion affirming Monnier's conviction and sentence.  *See United States v. Monnier,* 412 F.3d 859, 862 (8th Cir. 2005).  The Eighth Circuit first found that the evidence was sufficient to convict Monnier on both counts. *Id.* at 861-62.  It also found no abuse of discretion in the district court's denial of the defendant's motion for a mistrial.  *Id.* at 863.  Because Monnier had not raised a *Blakely* or *Booker* challenge to his sentence in trial court, the Eighth Circuit applied the "plain error" standard announced in *United States v. Olano,* 507 U.S. 725, 731 (1993), and *United States v. Pirani,* 406 F.3d 543, 550 (8th Cir. 2005) (*en banc*).  *Monnier,* 412 F.3d at 863. Under that test, an appeals court can correct an error that was not objected to at trial if there is:  (1) error, (2) that is plain, and (3) that affects substantial rights, and the court finds the error seriously affects the fairness, integrity or public reputation of judicial proceedings. *Id.*  The Eighth Circuit found the district court's enhancement for obstruction of justice was "erroneous in light of *Booker* because it was imposed on the basis of judge-found facts in a mandatory guidelines regime" thus fulfilling the first two requirements of the plain error test.  *Id.*

In order to satisfy the requirement that the error affected Monnier's substantial rights, the Eighth Circuit stated that Monnier would have to demonstrate "a 'reasonable probability,' based on the appellate record as a whole, that but for the error, he would have received a more favorable sentence."  *Id.*  Although it acknowledged the district court's

statement that "I think that under the guidelines I really don't have much choice, other than to do what I'm doing . . . I'm going to give you the minimum sentence," the Eighth Circuit noted that "'sentencing at the bottom of the range is the norm for many judges, so it is insufficient, without more, to demonstrate a reasonable probability that the court would have imposed a lesser sentence absent the *Booker* error.'"   *Id.* (quoting *Pirani*, 406 F.3d at 553).   Accordingly, it found that Monnier had not demonstrated prejudice as a result of the Constitutional error, and was not entitled to redress.   *Id.*   Monnier filed a petition for rehearing by the panel, as well as by the court *en banc,* and that petition was denied on August 24, 2005.[8]   Filing No. 207.   Monnier filed a Petition for a Writ of Certiorari which was denied on January 9, 2006.   *Monnier v. United States*, 546 U.S. 1116 (2006).

In his § 2255 motion, Monnier argues ineffective assistance of counsel at trial and on appeal.   He contends, in *pro se* pleadings and in supplemental briefing by appointed counsel, that his trial counsel was ineffective in pressuring him not to testify in his own defense and in failing to call certain witnesses.   He asserts that appellate counsel was ineffective in failing to challenge the denial of the downward departure motion and failing to properly raise and argue *Blakely/Booker* issues.   He contends that the district court would have sentenced him to the mandatory minimum sentence under advisory guidelines regime, and accordingly asks to be resentenced to a term of 240 months (twenty years). In opposition to the motion, the government submits the affidavits of trial and appellate counsel.   Filing No. 244, Index of Evid., Document 2, Affidavit of Stuart J. Dornan; Document 3, Affidavit of W. Russell Bowie.

---

[8]In the petition for rehearing, Monnier's appellate counsel argued that the district court would have sentenced Monnier to a shorter sentence under advisory Guidelines, citing statements in the record, but did not present any argument on the propriety of a variance or the consideration of the 3553(a) factors. *See* Filing No. 224, Index of Evid., Document 2, Suggestion for Rehearing En Banc.

## II.  DISCUSSION

### A.  The Law

Under 28 U.S.C. § 2255, a federal prisoner has "an avenue for relief if his 'sentence was imposed in violation of the Constitution or laws of the United States, or . . . was in excess of the maximum authorized by law.'" *King v. United States*, 595 F.3d 844, 852 (8th Cir. 2010) (quoting 28 U.S.C.A. § 2255(a)).  Ineffective assistance of counsel issues are appropriately raised in collateral proceedings.  *See United States v. Hughes*, 330 F.3d 1068, 1069 (8th Cir. 2003).  The right to counsel is a fundamental right of criminal defendants; it assures the fairness, and thus the legitimacy, of our adversary process. *Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986).  Under the Fifth and Sixth Amendments, a criminal defendant is entitled to assistance of counsel at trial and at his first appeal of right.  *See Gideon v. Wainwright*, 372 U.S. 335, 344 (1963) (trial); *Evitts v. Lucey*, 469 U.S. 387, 392-93 (1985) (the fundamental right to effective assistance of counsel extends to a criminal defendant's first appeal as of right).  The right to counsel includes the right to reasonably effective counsel.  *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  In order to make out a claim of ineffective assistance, a petitioner must satisfy the familiar *Strickland* standard, "which requires a showing 'that his lawyer's performance fell below the minimum standards of professional competence (deficient performance) and that there is a reasonable probability that the result of the proceedings would have been different if his lawyer had performed competently (prejudice).'" *King v. United States*, 595 F.3d at 852 (quoting *Alaniz v. United States*, 351 F.3d 365, 367-68 (8th Cir.2003)).

Deficient performance "is that which falls below the 'range of competence demanded of attorneys in criminal cases.'" *Sinisterra v. United States*, 600 F.3d 900, 906

(8th Cir. 2010) (quoting *Strickland*, 466 U.S. at 687). "The standard is an objective one, viewed in light of professional norms prevailing when the representation took place." *Id.*; *Bobby v. Van Hook*, — U.S. —, —, 130 S. Ct. 13, 16 (Nov. 9, 2009) (per curiam). We must consider "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688. The reasonableness of counsel's challenged conduct must be judged on the facts of the particular case, viewed as of the time of counsel's conduct. *King*, 595 F.3d at 852.

Under *Strickland*, strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable. *Rodela-Aguilar v. United States*, 596 F.3d 457, 464 (8th Cir. 2010). The Eighth Circuit has "consistently held that a reasoned decision not to call a witness 'is a virtually unchallengeable decision of trial strategy,' in part because 'there is considerable risk inherent in calling any witness because if the witness does not hold up well on cross-examination, the jurors might draw unfavorable inferences.'" *Id.* (quoting *United States v. Staples*, 410 F.3d 484, 488-89 (8th Cir. 2005)). Also, counsel is not necessarily ineffective for failing to raise an argument that may have had merit but was a wholly novel claim at the time. *Id.* at 853; *Alaniz,* 351 F.3d at 368 (finding deficient performance in failure to raise improper aggregation of drug quantity at sentencing and on appeal).

To establish prejudice under *Strickland,* a petitioner must "demonstrate that there is a reasonable probability that, but for counsel's claimed unprofessional errors, the result of the proceeding would have been different." *Christenson v. Ault*, 598 F.3d 990, 996 (8th Cir. 2010). In the sentencing context, prejudice can be found with a showing that, had an argument been presented, a defendant likely would have received a much shorter

sentence. *King*, 595 F.3d at 852-53. "An error increasing a defendant's sentence by as little as six months can be prejudicial within the meaning of *Strickland*." *Alaniz*, 351 F.3d at 368; *see also United States v. Spigner*, 416 F.3d 708, 711 (8th Cir. 2005); *King*, 595 F.3d at 853-54. A petitioner is entitled to relief under § 2255 if an error by appellate counsel costs a defendant the opportunity to present a meritorious argument on direct appeal. *King*, 595 F.3d at 853 (involving plain error in the dismissal of a direct appeal on the basis of an unenforceable appeal waiver).

When a Supreme Court decision results in a "new rule" of criminal procedure, that rule applies to all criminal cases still pending on direct review. *Never Misses A Shot v. United States*, 413 F.3d 781, 783 (8th Cir. 2005). The constitutional rule of criminal procedure established in *Blakely* is available to defendants whose criminal cases were not yet final at the time the decision was issued.[9] *Losh v. Fabian*, 592 F.3d 820, 823 (8th Cir. 2010); *Booker*, 543 U.S. at 268 (holding *Booker* was to be applied to all cases pending on direct review). After the Supreme Court's decisions in *Blakely* and *Booker*, the Eighth Circuit found remands for resentencing were appropriate when a district court explicitly stated displeasure with the Guidelines or stated that it was constrained by the mandatory Guidelines in sentencing. *See, e.g., United States v. Whipple*, 414 F.3d 887, 888 (8th Cir. 2005) (the district court stated its displeasure with the Guidelines rooted in health and age considerations that were prohibited under the mandatory Guidelines but may be considered under the advisory scheme); *United States v. Aldridge*, 413 F.3d 829, 835-36

---

[9]Monnier's court-appointed counsel for this § 2255 motion makes the erroneous concession that Monnier is not entitled to relief for a *Booker* error, relying on the principle that new rules of criminal procedure are not applied on collateral review of criminal convictions that were final before the new rules were announced. Monnier's case was not final until his direct appeal and his petition for a writ of certiorari to the Supreme Court were concluded.

(8th Cir. 2005) (involving district court's stated displeasure with sentencing the defendant to a higher term than another coconspirator); *United States v. Fleck*, 413 F.3d 883, 897 (8th Cir. 2005) (the district court noted at sentencing that it wished there was some way it could give one defendant a lower sentence).  Even without an express statement from the district court, factors showing cognizance of and sensitivity to a defendant's mitigating history or characteristics, "combined with a court's stated predisposition to give a sentence at the low end of the Guidelines," could amount to a reasonable probability that the district court would have given a lower sentence under advisory Guidelines, warranting a remand. *Spigner*, 416 F.3d at 713.  In contrast, the Eighth Circuit found no remand was necessary when the record contained no suggestion that the district court felt frustrated or constrained in sentencing or that it considered a sentence under the Guidelines to be unreasonable, a sentence was imposed in the middle or upper end of a Guidelines range, or a district court commented that a sentence comported with the objectives of 18 U.S.C. § 3553(a). *See, e.g., United States v. Mooney*, 425 F.3d 1093, 1104 (8th Cir. 2005); *United States v. Noe*, 411 F.3d 878, 888 (8th Cir.2005) (stating "[t]hat the district court imposed sentences well in excess of the minimum guidelines range forecloses any plausible contention that a merely advisory guidelines regime would probably have resulted in lesser sentences."); *United States v. Barth*, 424 F.3d 752, 765 (noting the district court's comment that the sentence "was certainly appropriate and warranted"); *United States v. Young*, 413 F.3d 727, 730 (8th Cir. 2005) (involving a sentence at the top of the Guidelines range and a comment that "this is just punishment").

In the wake of *Booker*, the district court's duty at sentencing is not merely to calculate the appropriate Guidelines range and then determine if a departure is

17

appropriate, but to consider Guidelines ranges and tailor the sentence in light of other statutory concerns as well.  _Spigner_, 416 F.3d at 711.  The district court may not presume that the Guidelines range is reasonable and should consider all of the § 3553(a) factors to make an individualized assessment based on the facts presented.[10]  _Gall v. United States,_ 552 U.S. 38, 49-50 (2007).  Under § 3553(a), the district court is required to "impose a sentence sufficient, but not greater than necessary," to account for the nature and seriousness of the offense, provide just punishment, deter criminal conduct, protect the public, and avoid sentencing disparities."  18 U.S.C. § 3553(a).  _Booker_ made the United States Sentencing Guidelines advisory, but had no effect upon statutory sentencing schemes.  _See United States v. Rojas-Coria_, 401 F.3d 871, 874 n.4 (8th Cir. 2005) (noting that _Booker_ has no impact on a sentence determined by a statutory mandatory minimum).

After _Booker_, district courts are required to follow a three-step sentencing procedure:  (1) the district court must calculate the appropriate advisory Guidelines range based on the applicable offense level and the criminal history category; (2) the district court

---

[10]18 U.S.C. § 3553(a) lists seven factors that a sentencing court must consider.  The first factor is a broad command to consider "the nature and circumstances of the offense and the history and characteristics of the defendant."  18 U.S.C. § 3553(a)(1).  The second factor requires the consideration of the general purposes of sentencing, including:

the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).  The third factor pertains to "the kinds of sentences available," § 3553(a)(3); the fourth to the Sentencing Guidelines; the fifth to any relevant policy statement issued by the Sentencing Commission; the sixth to "the need to avoid unwarranted sentence disparities," § 3553(a)(6); and the seventh the need to provide restitution to any victim," 18 U.S.C. § 3553(a)(7).

should consider whether any traditional Guidelines-based departures apply; and (3) the district court should then consider the other § 3553(a) factors to decide whether to impose a Guidelines or non-Guidelines sentence. _United States v. Solis-Bermudez_, 501 F.3d 882, 884 (8th Cir. 2007). Since _Booker_, the Eighth Circuit has "attempted to carefully distinguish between" sentencing departures under the Guidelines and "sentencing variances, which are non-Guidelines sentences based on the factors enumerated in 18 U.S.C. § 3553(a)." _Id._ Before _Booker,_ a district court's refusal to grant a downward departure was unreviewable on appeal, unless the district court had an unconstitutional motive or erroneously believed that it was without authority to grant the departure. _United States v. Dabney_, 367 F. 3d 1040, 1044 (8th Cir. 2004). Post-_Booker_, an appeals court will not review a district court's refusal to depart as part of its assessment of the correctness of the district court's Guidelines calculation at the first step of the sentencing procedure. _See United States v. Utlaut_, 497 F.3d 843, 845 (8th Cir. 2007). However, Eighth Circuit cases "continue to recognize that 'a guideline departure prohibition does not preclude the district court from considering that factor when the issue is a variance under _Booker_.'" _United States v. Solis-Bermudez_, 501 F.3d at 886 (quoting _United States v. Gatewood_, 438 F.3d 894, 897 (8th Cir.2006)). "Because the standards justifying departures under the advisory Guidelines are narrower than the factors enumerated in § 3553(a), '[t]here may well be cases that would not justify a departure under the Guidelines but which are appropriate for a variance.'" _Id._ (quoting _United States v. Robinson_, 454 F.3d 839, 842 (8th Cir.2006)); _see also Spigner_, 416 F.3d at 712 n.1 (observing that the post-_Booker_ advisory sentencing scheme permits "broader considerations of sentencing implications" than the considerations provided under the advisory Guidelines); _United States v. Ryder,_ 414 F.3d

908, 919-20 (8th Cir. 2005) (remanding for resentencing where the district court, pre-*Booker*, was constrained from considering age and infirmity as a ground for a Guidelines departure, but could properly consider age and infirmity under the broader sentencing factors of § 3553(a) after *Booker*).

Once a sentence has been vacated, or a finding related to sentencing has been reversed and the case has been remanded for resentencing, the district court can hear any relevant evidence on that issue that it could have heard at the first hearing. *United States v. Cornelius*, 968 F.2d 703 (8th Cir. 1992); *United States v. Peterson*, 507 F.3d 1115, 1119 n.2 (8th Cir. 2007). On resentencing after a *Booker* error, a district court should determine what sentence it would have imposed when originally sentencing a defendant under advisory Guidelines and to sentence him to that term. *See Alaniz*, 351 F.3d at 368; *United States v. Goodman*, 509 F.3d 872, 877 (8th Cir. 2007) (the court could have validly considered any evidence it could have heard at the original sentencing).

### B.   Analysis

With respect to trial counsel, the court finds that Monnier has not satisfied the *Strickland* standards. The record shows that Monnier knowingly and voluntarily chose not to testify in his own behalf. Trial counsel admittedly advised the defendant not to testify and the court finds that was a reasonable tactical decision. Under the circumstances of the case, Monnier's testimony could easily have done him more harm than good. Further, Monnier has not shown that the testimony of other potential witnesses would have benefitted him, since there is overwhelming evidence that Monnier supplied Mendoza with

some methamphetamine on the night of her death.[11]  Because the government did not have to prove that Monnier was the only person who provided Mendoza with drugs, evidence that others might also have given her methamphetamine would not have exonerated him.  Accordingly, the court finds that Monnier is not entitled to habeas corpus relief by reason of ineffective assistance of counsel at trial.

With respect to appellate counsel, however, the court finds that Monnier has shown that counsel's performance was deficient and that he suffered prejudice as a result of counsel's deficient performance.  Appellate counsel's representation of Monnier on appeal fell below the range of competence demanded of an attorney in criminal appeal.  Monnier was represented by the same attorney at trial and on appeal.  The Guidelines were mandatory at the time of the sentencing.  Counsel was aware, or should have been aware, of this court's reluctance to sentence Monnier to the then-mandatory Guidelines sentence of 360 months.  Counsel's failure to alert the Appeals Court to the numerous indications in the record that this court would be willing to sentence defendant below the Guidelines range if it were permitted to do so, fell below an objectively reasonable level of competence.

The Eighth Circuit affirmed Monnier's thirty-year sentence only because it found that the defendant had not met his burden, under plain error review, to show that there was a reasonable probability that the district court would have imposed a different sentence

---

[11]The jury was instructed that the government had to prove that:

(1)  That the defendant provided Esperanza Mendoza methamphetamine; and

(2)  That that methamphetamine produced the death of Esperanza Mendoza in a continuous sequence of events, and without which the result would not have occurred.

Filing No. 147, Final Jury Instructions, Instruction No. 25.

under advisory guidelines.  Had appellate counsel argued more forcefully and provided evidence of record, the Appeals Court would have recognized the "reasonable probability" that, had the district court known the Guidelines were advisory and the court were free to consider the Guidelines together with other sentencing goals listed in 18 U.S.C. § 3553(a), the district court would have exercised its discretion by imposing a more favorable sentence.

The Eighth Circuit held that a sentence at the low end of a Guidelines range, without more, will not give rise to a reasonable probability of a shorter sentence, but in this case, there was clearly "more" that should have been presented to the Court of Appeals. Coupled with a sentence at the low end of the Guidelines, the record contained numerous indications that the court was predisposed to give a lower sentence if possible.  The district court referred to the statute as "harsh"; the court characterized the thirty-year sentence as "too long" and as a death sentence; the court stated that it had no other choice; urged counsel to pursue the downward departure issue on appeal; and urged the defendant to pursue his rights in a 28 U.S.C. § 2255 action.  Yet, on appeal, counsel not only failed to refer to these statements, but expressly disclaimed the existence of evidence in the record that would show the court's inclination toward a shorter sentence.  Speculation such as "betting the farm" is not an adequate reason for a remand.

Accordingly, the court finds that Monnier has shown both representation that fell below objective standards on appeal and prejudice as a result of the representation. Monnier is entitled to habeas corpus relief for the reason that his appellate attorney's performance cost him the opportunity to present a meritorious argument on direct appeal. His appeal was denied because appellate counsel erroneously stated that there was no

evidence in the record that showed the district court would have given a shorter sentence. Appellate counsel's failure to point to the evidence in the record resulted in the Eighth Circuit affirming the sentence rather than remanding for resentencing.  Monnier has undoubtedly shown prejudice because, had the case been remanded for resentencing, this court would have sentenced Monnier to the mandatory minimum sentence.

Other instances of deficient representation also support this conclusion.  The court further finds counsel was ineffective for failing to raise the victim conduct issue in support of either a departure or a variance and failing to address sentencing factors under 18 U.S.C. § 3553.  Monnier's motion for a downward departure for victim conduct was denied for the express reason that the trial court believed, based on the earlier reversal of a similar downward departure, that it did to have the authority to depart.  Even before *Blakely*, the refusal to depart would have been reviewable if it was clear that the court thought it did not have the authority to depart.  The court's statements at sentencing clearly indicate that was the case.  The court expressly urged sentencing counsel to present the legal question of the propriety of a downward departure in these circumstances to the Appeals Court. Appellate counsel chose not to do so, which could arguably have been an objectively reasonable tactical decision if *Blakely* had not been decided, but fell below a reasonable level of competence for an attorney in the uncertain sentencing climate that prevailed in the immediate aftermath of *Blakely* and *Booker*.

The advent of *Blakely* changed the sentencing landscape.  In the interregnum between *Blakely* and *Booker*, sentencing courts responded to the altered landscape in several ways—by finding that Blakely did not apply to the federal Guidelines and continuing to follow them; by requiring that enhancing facts be either admitted or proved to the court

23

or a jury beyond a reasonable doubt; or by returning to the pre-Guidelines scheme of unfettered indeterminate sentencing. The record of oral argument shows that appellate counsel, as well as the Appeals Court, contemplated the pending *Booker* and *Fanfan* cases and counsel acknowledged that no one could anticipate what action the Supreme Court might take. That being the case, competent appellate counsel would have presented alternative arguments to address potential outcomes.

Appellate counsel argued that the difference *Blakely* would make to Monnier's sentence would be to reduce it from 360 to 292 months—a 68-month difference. Although the sentencing court was not free to sentence below the statutory minimum of twenty years, there was still a ten-year difference between the statutory minimum and the Guidelines minimum. After *Blakely*, counsel had a reasonable legal ground to argue that the sentence should be reduced by as much as ten years. The record shows the trial court's inclination to sentence Monnier to a shorter sentence.

The appeal was still pending when the Supreme Court's *Booker* decision was released and the remedy for a *Blakely* violation was established. At that point, it was clear that the Guidelines were to be treated as advisory. Reasonably competent counsel would have sought leave to file a supplemental brief to point to evidence in the record that would show the Court of Appeals that the district court would have sentenced Monnier to a shorter sentence if the Guidelines were advisory. As noted, there was such evidence in the record. It then becomes apparent that counsel was deficient in failing to argue for a variance, as opposed to a departure, from the recommended Guidelines range. In the seven months between *Booker* and the Eighth Circuit's decision in this case, counsel did not present argument or point to evidence in the record that addressed the issue of the

effect of *Booker,* rather than *Blakely*, on Monnier's sentence. *Booker* established that the Guidelines were advisory only, and opened up the prospect of truly discretionary consideration of the 18 U.S.C. § 3553 factors. Because appellate counsel failed to supplement his submissions and arguments on appeal, the Eighth Circuit was not presented with evidence or argument on the propriety of a variance as opposed to a departure, nor with the salient facts that would have had an impact on the court's consideration of the § 3353 factors.

Having found that Monnier's motion to vacate, set aside or correct his sentence should be granted, the court finds that there is no necessity for a resentencing hearing. The court has no authority to sentence below that statutory mandatory minimum. In consideration of the 18 U.S.C. § 3553(a) sentencing factors, the court finds Monnier should be sentenced to the mandatory minimum of twenty years.

With respect to the nature and circumstances of the offense, the court finds that drug distribution resulting in death is a serious and tragic crime. The seriousness of the crime is evident in the fact that it is a strict liability crime, punishable regardless of intent or foreseeability. Though the evidence in this case was sufficient to support the conviction, it was far from conclusive with respect to causation. Expert testimony established that Ms. Mendoza's death was caused by methamphetamine ingestion and the jury found that Monnier had distributed methamphetamine to her. The government did not prove, however, that additional drugs had not been provided to Mendoza by others. In considering the nature and circumstances of the offense, the court must consider Monnier's culpability relative to the others whose conduct also contributed to the tragic event. Sadly, the victim's conduct is also a consideration in this calculus. The evidence

shows that Mendoza was a methamphetamine addict who had been consuming methamphetamine for at least eight months.  She was an adult and there was no showing that she was a particularly vulnerable victim.

There are varying levels of participation and blameworthiness in any drug distribution scheme.  Monnier's place in the drug distribution scheme is also relevant to the nature and circumstances of the offense.  Again, although the evidence was sufficient to sustain the conviction on the drug conspiracy charge, the court found that Monnier was far from the leader or kingpin of the distribution network.  There was evidence that others were bigger suppliers than Monnier.  The evidence adduced at trial shows that Monnier's culpability in the drug conspiracy would fall closer to the low end than to the high end.

The court has also considered Monnier's history and characteristics.  The defendant is presently 49 years old.  He has been diagnosed as having Hepatitis C, which he contracted while detained on this offense.  He has also been diagnosed as polysubstance dependent and as having Atypical Anxiety Disorder, Personality Disorder, possible Bipolar Disorder, and Depression.  He began drinking alcohol in seventh grade and taking drugs in ninth grade.  He is a high school graduate and has been employed as a forklift operator and an over-the-road trucker and he has owned a sprinkler business.  He served in the Air Force and was honorably discharged.  Monnier has a history of assaultive behavior, but his alcohol and drug addictions are factors to consider.

The court has consulted the Guidelines and uses the Guidelines calculation as its initial starting point.  However, in view of the fact that the drug distribution Guidelines are driven by Congressional directive, rather than grounded in any scientific, statistical, or empirical method, the advice imparted in the Guidelines is outside the Sentencing

Commission's area of expertise and need not be accorded a high degree of deference by the court.  The Sentencing Commission diverged significantly from its studied, empirical approach in formulating the drug distribution Guidelines and produced a sentence greater than necessary to provide just punishment.

The Guidelines sentencing scheme for drug distribution offenses illogically skews sentences for mid-level or "average" defendants to the upper end of the statutory range, regardless of the particular defendant's acceptance of responsibility, criminal history, specific conduct, or degree of culpability, thus blurring distinctions between the least culpable and the worst offenders.  Under the Guidelines scheme, the increased sentences for distribution resulting in death further skew the sentence, especially because there is no mens rea requirement.  The charge for distribution resulting in death triggers the mandatory minimum sentence of twenty years for a drug distribution crime that might otherwise result in a much shorter sentence.  The increased culpability that attaches to these tragic circumstances is already accounted for by the imposition of the mandatory minimum under the statute and need not be augmented by the Guidelines.

The court also considers the need to avoid sentencing disparities.  The evidence adduced at trial showed that several people were involved in and had varying levels of responsibility for the tragic event that culminated in the death of a twenty-year-old woman. Monnier was the only person charged with drug distribution resulting in death.  Of the witnesses who also shared illicit drugs with the defendant and Mendoza, Rick Edwards was initially sentenced to a term of incarceration of 120 months with five years of supervised release to follow.  After the government filed a substantial assistance motion, his sentence was reduced to 36 months with five years of supervised release.  Brandy Stroud was never

prosecuted in federal court.  If prosecuted in state court, it is not likely that Stroud would have served any more time than Edwards.  A sentence of twenty years for Monnier respects the relative levels of culpability between Monnier and the others involved in the events leading to Mendoza's tragic death.

The court finds that the thirty-year sentence recommended under the Guidelines is greater than necessary to protect the public and to deter Monnier from re-offending.  The mandatory minimum sentence of twenty years is more that adequate to achieve the goals of sentencing in this case.  Twenty years is a significant term of imprisonment for a person of Monnier's age and health.  The public will be adequately protected by the imposition of concurrent terms of supervised release of five years on Count I and three years on Count II, with strict conditions, and by the provision of drug and alcohol abuse treatment to Monnier.  To the extent that harsh punishment is necessary to deter drug distribution that results in death, the strict liability character of the crime creates the incentive for drug dealers to warn customers of the strength of the drugs being sold and to refuse to supply drugs to particularly vulnerable people.  The deterrent value of a longer sentence is marginal in the context of a strict liability scheme.  All offenders are subject to harsh punishment without regard to relative culpability as long as death or serious bodily injury results from their actions.

Accordingly, the court finds Monnier should be resentenced to concurrent terms of imprisonment of two hundred forty (240) months on Count I and two hundred forty (240) months on Count II.  An Amended Judgment and Commitment and Statement of Reasons in accordance with this Memorandum Opinion and Order will issue this date.

28

IT IS ORDERED:

1.  Monnier's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence (Filing No. 214) is granted.

2.  The Judgment in a Criminal Case (Filing No. 180) is hereby vacated.

DATED this 4th day of June, 2010.

BY THE COURT:

s/ Joseph F. Bataillon
Chief District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites.  The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites.  The court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.